IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARDVARK EVENT LOGISTICS, INC. : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO.  16-5873 |
| BOBCAR MEDIA LLC, GOLDBERG : | |
| COHEN, LLP and MORRIS E. COHEN : | |

O'NEILL, J.                                                                                           January 5, 2017

## MEMORANDUM

Plaintiff Aardvark Event Logistics, Inc. filed suit against three New York citizens—Bobcar Media LLC, Bobcar's intellectual property counsel Morris E. Cohen and Attorney Cohen's firm Goldberg Cohen LLP—alleging that these defendants intentionally disparaged plaintiff in an effort to gain a competitive advantage over plaintiff and interfere with its existing and prospective business relations.  Defendants have now moved to dismiss the complaint on the grounds of personal jurisdiction.  For the following reasons, I will grant the motion and dismiss the complaint.

## BACKGROUND

According to the facts set forth in plaintiff's complaint, [1] plaintiff Aardvark Event Logistics, Inc., a corporation organized and with its principal place of business in Pennsylvania,

---

[1] When determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).  In accordance with this principle, my recitation of the facts assumes the truth of the factual statements in the complaint.

is a leading experiential and event mobile marketing firm that provides custom-tailored, built-to-order promotional vehicles for mobile tours, trade shows and a wide variety of other event marketing programs. Compl. ¶¶ 7, 13. Defendant Bobcar Media, LLC, a limited liability company organized and with its principal place of business in New York, is Aardvark's direct competitor in the mobile and experiential marketing space. Id. ¶¶ 8, 14. Defendant Goldberg Cohen LLP (GC), a limited liability partnership organized in and with its principal place of business in New York, is a law firm that serves as litigation counsel to Bobcar. Id. ¶¶ 9, 15. Defendant Morris Cohen, a New York citizen, is an attorney practicing in the state of New York with the GC law firm. Id. ¶ 10.

On February 4, 2016, Bobcar—through GC and Cohen—filed a complaint in the United States District Court for the Southern District of New York alleging that Aardvark infringed Bobcar's patents and trade dress (the New York Action). Id. ¶ 16. In response to a motion to dismiss, Bobcar filed two amended complaints, the second of which was docketed on April 20, 2016. Id. ¶¶ 18–19. On May 11, 2016, Aardvark moved to dismiss Bobcar's second amended complaint and, to date, the state court has not decided that motion. Id. ¶ 20.

Shortly after the New York Action commenced, defendants purportedly constructed a scheme to malign Aardvark's reputation within the business community and disrupt Aardvark's current and future business relationships with clients. Id. ¶¶ 21, 22. On May 2, 2016, Bobcar, through GC and Cohen, wrote a letter to the California offices of Samsung Electronics—a client for whom Aardvark is currently providing mobile marketing services—advising Samsung that Bobcar filed a lawsuit against Aardvark's allegedly infringing activities and apparently seeking to influence Samsung not to do business with Aardvark. Id. ¶ 24. Specifically, the letter stated, in part,

> We trust that Samsung appreciates Bobcar Media's concerns about its valuable intellectual property, and the importance of that intellectual property to Bobcar Media's business and its relationships with its customers. As a result, this information is being provided so that Samsung can consider and evaluate it further, particularly in guiding its business activities accordingly and choosing its preferred service providers and partners.

Id. ¶ 34. Defendants informed Samsung that its use of Aardvark's Aardy vehicle would constitute infringement. Id. ¶ 26. The letter also enclosed a copy of Bobcar's second amended complaint in the New York action. Id. ¶ 33. Notably, Samsung was previously a client of Bobcar. Id. ¶ 28.

In addition, on August 9, 2016, Bobcar, through GC and Cohen, sent a letter to the Minnesota-based senior management of Wireless Vision, LLC, who is also a current customer of Aardvark. Id. ¶ 35. Defendants advised Wireless Vision about the New York Action, enclosed a copy of the second amended complaint, indicated that Aardvark's Aardy promotional vehicle is an infringement of six of Bobcar's patents, threatened Wireless Vision that its use of Aardvark's Aardy vehicle would constitute infringement and tried to procure Wireless Visions' business by stating Bobcar "is always interested in expanding its innovative services to potential partners such as Wireless Vision, continuing the tradition of very productive relationships that Bobcar Media has had with its clients in the past." Id. ¶¶ 35–40. The letter further contained language similar to that found in the Samsung letter. Id. ¶ 42. Unlike Samsung, Wireless Vision never had a commercial relationship with Bobcar. Id. ¶ 41.

Defendants also allegedly disparaged Aardvark through oral communications. Id. ¶ 43. For example, on May 5, 2016, Bobcar attended the Event Marketer Summit in Denver, Colorado, one of the largest conferences for the mobile and experiential marketing industry in the United States. Id. ¶ 45. At that time, Bobcar made statements to at least one of Aardvark's existing

3

clients concerning Aardvark's business practices in light of the allegations contained in the New York action.  Id. ¶ 45.  Bobcar further suggested this company should not do business with Aardvark as a result of Aardvark's failure to follow the law, and should instead consider using Bobcar for its mobile marketing needs.  Id.¶ 47.

On September 21, 2016, Aardvark initiated the present suit in the Pennsylvania Court of Common Pleas for Montgomery County alleging tortious interference with existing and prospective contractual relations, defamation and civil conspiracy.  Compl., ECF No. 1, Ex. A.  On November 14, 2015, defendants removed the action to federal court.  Notice of Removal, ECF No. 1.  Although plaintiff moved to remand the case to state court on the ground that the notice of removal was untimely, I denied that motion in a memorandum and order dated December 21, 2016. ECF Nos. 13 & 14.

On November 21, 2016, defendants moved to dismiss the case for lack of personal jurisdiction.  ECF No. 5.  Plaintiff responded on December 8, 2016, and Defendants filed a reply brief on December 20, 2016.  ECF Nos. 10 & 12.

## STANDARD OF REVIEW

Motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) require the court to accept as true the allegations of the pleadings and all reasonable inferences therefrom, and to resolve all factual disputes in favor of the plaintiff.  Fed. R. Civ. P. 12(b)(2); see also Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002).  The rule, however, "does not limit the scope of the court's review to the face of the pleadings;" rather the court must also consider any affidavits submitted by the parties.  Scott v. Lackey, No. 02-1586, 2005 WL 2035598, at *1 (M.D. Pa. Aug. 11, 2005).

Although a defendant has the initial burden of raising the lack of personal jurisdiction defense, once such a defense is raised, the burden shifts to plaintiff to establish facts that support an exercise of personal jurisdiction.  Provident Nat'l. Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987); Cumberland Truck Equip. Co. v. Detroit Diesel Corp., 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005).  Plaintiff may do so through affidavits or competent evidence establishing sufficient contacts with the forum state.  De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, No. 08-0533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008).  Such contacts must be shown with "reasonable particularity."  Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), quoting Provident, 819 F.2d at 437.  If plaintiff meets this burden, defendant must then set forth the presence of other considerations that render personal jurisdiction unreasonable.  De Lage Landen, 2008 WL 4822033, at *3, citing Carteret Sav. Bank v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992).

### DISCUSSION

Plaintiff has not established that this court has personal jurisdiction over defendants in this case.  Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits.  Fed. R. Civ. P. 4(k)(1)(A); see also Martin v. Citizens Fin. Group, Inc., No. 10-260, 2010 WL 3239187, at *3 (E.D. Pa. Aug. 13, 2010).  Pennsylvania law, which governs the present case, necessitates the application of Pennsylvania's long-arm statute, 42 Pa. C.S. § 5322.  Under this statute, personal jurisdiction of Pennsylvania courts over nonresident defendants is permitted "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  42 Pa. Cons. Stat. § 5322(b); see Mellon Bank, 960 F.2d at

5

1221 ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment.").  Therefore, a court need only inquire whether the exercise of personal jurisdiction over the defendant would be constitutional under the Due Process Clause.  Mellon Bank, 960 F.2d at 1221.  Pursuant to such constitutional considerations, physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).  Instead, personal jurisdiction may be based on either a defendant's general contacts or his specific contacts with the forum.  Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).

"General jurisdiction depends on a defendant having maintained 'continuous and systematic contacts' with the forum state."  D'Jamoos ex rel. Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 107 (3d Cir. 2009), citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415–16 (1984).  Proof of such contact requires a showing of "extensive and pervasive" activity in the forum state.  See Reliance Steel Prods. Co. v. Watson, Ess, Marshall, & Engass, 675 F.2d 587, 589 (3d Cir. 1982) (quotations omitted).  The defendant's contacts need not be related to the cause of action being litigated.  McMullen v. Eur. Adoption Consultants, Inc., 109 F. Supp. 2d 417, 418 (W.D. Pa. 2000).  Rather, if the foreign defendant "maintains 'continuous and systematic' contacts with a state, the state has general personal jurisdiction over the party, and the non-resident may be sued in that state on any claim."  Wilmington Fin., Inc. v. Moonis, No. 08-2365, 2008 WL 4661033, at *3 (E.D. Pa. Oct. 21, 2008) (quotations omitted).

In the absence of "continuous and systematic" contacts, a plaintiff may rely on "specific jurisdiction" where the cause of action is related to or arises out of the defendant's contacts with the forum.  IMO Indus., 155 F.3d at 259, citing Helicopteros, 466 U.S. at 414 n.8.  Specific

jurisdiction under the Due Process Clause requires satisfaction of a three-part inquiry. Louis A. Grant, Inc. v. Hurricane Equip., Inc., No. 07-438, 2008 WL 892152, at *3 (W.D. Pa. Apr. 2, 2008). First, the plaintiff needs to show that the defendant has "constitutionally sufficient 'minimum contacts' with the forum." IMO Indus., 155 F.3d at 259, citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Second, the plaintiff's claim must "arise out of or relate to those activities." Helicopteros, 466 U.S. at 414. Third, the court should consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"[2] Burger King, 471 U.S. at 476, quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945); see also O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007).

In the case of an intentional tort claim, however, the first and second factors of the specific jurisdiction analysis may be replaced by the "effects" test articulated by the United States Supreme Court in Calder v. Jones, 465 U.S. 783 (1984). See IMO Indus., 155 F.3d at 265 (adopting Calder "effects" test). "Under the effects test, a court may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 148 (3d Cir. 1992). To establish personal jurisdiction pursuant to the Calder "effects" test, a plaintiff must show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of

---

[2] The United States Supreme Court has identified five factors that courts should consider when balancing jurisdictional reasonableness, including: (1) the burden on defendants; (2) the forum state's interest in adjudicating the dispute; (3) plaintiff's interest in obtaining convenient and effective relief; (4) the interstate and international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest for the several states in furthering fundamental substantive social policies. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 324 (3d Cir 2007), citing Burger King, 471 U.S. at 477 and Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987).

the harm in the forum such that the forum can be said to be the focal point of the resulting harm; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. See IMO Indus., 155 F.3d at 265-66. The Court of Appeals has recognized, however, that Calder did not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state." Id. at 265. Rather, Calder simply acknowledged that "the unique relations among the defendant, the forum, the intentional tort, and the plaintiff may under certain circumstances render the defendant's contacts with the forum—which otherwise would not satisfy the requirements of due process—sufficient." Id. Finally, even where the three-pronged effects test is satisfied, a reviewing court must still ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).

In the present case, plaintiff does not assert that the court has general jurisdiction over defendants, nor does it claim that defendants have the requisite minimum contacts sufficient to support the exercise of specific personal jurisdiction.[3] Rather, it contends that under the Calder "effects test," personal jurisdiction over defendants exists as a result of their intentionally tortious actions. Defendants, in turn, respond that plaintiff's complaint and opposition papers provide no allegations of any transactions directed at Pennsylvania that would provide

---

[3] The Calder test need only be invoked when a district court finds that a defendant lacks sufficient minimum contacts under the traditional test. IMO Indus., Inc., 155 F.3d at 259–60. For "minimum contacts" to be present the defendant must have purposely availed itself of the privilege of acting within the forum state, thus invoking the benefits and protections of forum law, such that it could have reasonably anticipated being haled into court there. See Burger King Corp., 471 U.S. at 475. Plaintiff does not allege, and I have not independently found, the presence of any minimum contacts between defendants and Pennsylvania. There is no evidence that defendants maintain any operations or do any business in Pennsylvania.

jurisdiction here.  Faced with these conflicting arguments, I address each element of the Calder effects test separately.

## I. Intentional Tort

First, the parties do not dispute that the complaint contains numerous allegations of intentional torts committed by defendants.  Specifically, both defamation and tortious interference are intentional torts under Pennsylvania law.  Remick v. Manfredy, 238 F.3d 248, 260 (3d Cir. 2001).  Moreover, the tort of civil conspiracy requires a showing that two or more persons combined or agreed with intent to do either an unlawful act or a lawful act by unlawful means.  Walker v. N. Wales Borough, 395 F. Supp. 2d 219, 233 (E.D. Pa. 2005), citing Scully v. U.S. WATS, Inc., 238 F.3d 497, 516 (3d Cir. 2001).  Therefore, plaintiff has satisfied the first prong of the Calder test for all three of his claims.[4]

## II. Harm Felt in the Forum

Plaintiff has also satisfied the second prong of the Calder test for each of his claims.  The Court of Appeals has held that when a plaintiff is a resident of the forum state and the victim of an alleged tortious interference of contract, "the brunt of the harm caused by the alleged intentional tort must necessarily have been felt by [plaintiff] in [the forum], as [plaintiff's] business practice is based in [the forum]."  Remick v. Manfredy, 238 F.3d 248, 260 (3d Cir. 2001).

The complaint makes multiple allegations regarding the effects of defendants' conduct on plaintiff's business, as follows:

- By contacting and continuing to contact current prospective Aardvark clients orally and in writing, and informing them of

---

[4] Notably, personal jurisdiction must be analyzed separately for each claim.  Vizant Techs., LLC v. Whitchurch, 97 F. Supp. 3d 618, 629 (E.D. Pa. 2015).

    Bobcar's lawsuit against Aardvark and its allegations of patent infringement, business misconduct and unfair business practices, Defendants have and continue to tortiously interfere with Aardvark's contractual relationships.  Compl. ¶ 51.

- Aardvark has suffered and continues to suffer immediate, continuing and irreparable harm as a direct and proximate result of Defendants' willful, malicious, and tortious acts, including but not limited to, lost business opportunities.  Id. ¶ 54.

- Defendants['] making, adoption, publication, dissemination, distribution, and repetition of the defamatory statements have caused, and continue to cause, Aardvark to suffer harm because Aardvark's reputation actually has been adversely affected by the defamatory statements and their distribution.  Accordingly, Aardvark suffered, and continues to suffer, harm to its reputation, loss of good will, and reduced demand for its goods and services.  Id. ¶ 71.

- Defendants' making, adoption, publication, dissemination, distribution, and repetition of the defamatory statements have caused, and continue to cause, Aardvark to suffer special harm— including, but not limited to pecuniary losses, loss of potential revenue, good will, and business opportunities with current and prospective clients.  Id. ¶ 72.

- Defendants' making, adoption, publication, distribution, and repetition of the defamatory statements about Aardvark have further injured the reputation of Aardvark in the marketplace and have harmed Aardvark's business, resulting in further pecuniary losses, loss of good will, and loss of potential business opportunities with current and prospective clients.  Id. ¶ 73.

- GC and Cohen intentionally joined and participated in . . . [a] conspiracy to:  tarnish Aardvark's commercial reputation, misappropriate Aardvark's clients disrupt Aardvark's potential business relationships and otherwise cause financial and reputational harm to Aardvark.  Id. ¶ 87.

- Aardvark has and continues to suffer damages as a direct and proximate result of the aforementioned conspiracy.  Id. ¶ 88.

The complaint further alleges that Aardvark is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and with its principal place of business in

Huntingdon Valley, PA. Id. ¶ 7. It necessarily follows that plaintiff felt the brunt of the alleged harm in Pennsylvania such that Pennsylvania can be said to be the focal point of the harm. See Vizant Techs., 97 F. Supp. 3d at 632 (finding that an allegation that the defendants' conduct caused economic, reputational and other harm to the plaintiff, a company headquartered in Pennsylvania, is enough to establish that the plaintiff felt the brunt of the harm in Pennsylvania).

### III. Conduct Aimed at Pennsylvania

The third element of the Calder test, however, bars plaintiff's efforts to establish personal jurisdiction over defendants. This element requires that "the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." IMO Indus., Inc., 155 F.3d at 266. To satisfy this factor, a plaintiff must: (1) "show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum," and (2) "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id.; see also Vizant Techs., 97 F. Supp. 3d at 632 (finding the third prong met when "defendants not only knew that their conduct would cause harm to an entity located in [the forum], but also engaged in that conduct intentionally, with the goal of causing said harm").

In this case, defendants did not expressly aim any of their allegedly tortious conduct into Pennsylvania. The complaint sets forth three instances of defamation and intentional interference with contracts. First, defendants sent a letter to Samsung Electronics in California bringing to Samsung's attention the lawsuit pending in New York. Compl. ¶ 24 & Ex. A. Second, defendants sent a similar letter to Wireless Vision in Minnesota. Id. ¶ 35 & Ex. B. Finally, defendants allegedly made disparaging oral statements to an unidentified client at an Event Marketer Summit in Denver, Colorado. Id. ¶¶ 45–46. Plaintiff does not allege that

defendants had any direct contact in any way with Pennsylvania. Although defendants were presumably aware that plaintiff was a Pennsylvania corporation, Pennsylvania was not the focal point of the tortious activity as required by the third prong of the Calder test.

In an effort to skirt the absence of any activity directed at Pennsylvania, plaintiff offers several alternative arguments. First, plaintiff contends that at the time defendants sent their disparaging letter to Samsung, Aardvark was in the middle of conducting a mobile marketing tour for Samsung throughout Philadelphia, Pennsylvania. Pl.'s Resp. Opp'n, ECF No. 10, Ex. B. Plaintiff reasons that similar conduct was found to be sufficient in Remick v. Manfredy, where the claimed tortious conduct was intended to disrupt a contractual relationship being substantially performed in Pennsylvania. Specifically, in Remick, the defendant allegedly "set [plaintiff] up to fail" in the plaintiff's contract negotiations on behalf of defendant and published defamatory information about plaintiff's skill and ability as a negotiator. Remick, 238 F.3d at 260. The court found that because the plaintiff had submitted an affidavit that he conducted the majority of his negotiation, consultation and advice services for the defendant out of his Philadelphia office, it followed that any intentional conduct by the defendants designed to interfere with plaintiff's contractual relations would have been directed to and felt in Pennsylvania. Id. Analogizing Remick to the present case, plaintiff argues that defendants likewise sent their May 2, 2016 letter to Samsung with the express intent of disrupting the relationship between plaintiff and Samsung, part of which was being carried out via the ongoing Philadelphia tour.

This argument is meritless. The effects test prevents a defendant who didn't expressly aim its conduct at the forum state from being haled into a jurisdiction solely because it intentionally caused harm that was felt in the forum state. Marten v. Godwen, 499 F.3d 290, 297

(3d Cir. 2007). "Even if a defendant's conduct could cause foreseeable harm in a given state, such conduct does not necessarily give rise to personal jurisdiction in that state." Id. Rather, jurisdiction is proper when the state of a plaintiff's residence is the focus of the defendant's activities out of which the suit arises. Id. at 297–99. Consistent with these principles, the Remick court found direct contacts between the defendant and Pennsylvania since the majority of the plaintiff's negotiation, consulting and advising services for the defendant took place in Pennsylvania and the conduct was expressly aimed at those activities. Remick, 238 F.3d at 260. By contrast in this case, there is no evidence that defendants had any contact with or aimed any of their tortious activity at Pennsylvania. Moreover, plaintiff has not shown that it conducted any negotiations or business dealings with Samsung in Pennsylvania such that the allegedly disparaging letter would have impacted those negotiations. Finally, the mere fact that plaintiff was performing a mobile marketing tour on behalf of Samsung in Pennsylvania at the relevant time does not establish that defendants intended that the letter disrupt the work in Pennsylvania.

Alternatively, plaintiff argues, by way of a footnote, that its allegations of a conspiracy to perpetrate a nationwide smear campaign may subject the defendants to jurisdiction in Pennsylvania. In support it cites CDI International, Inc. v. Marck, No. 04-4837, 2005 WL 146890 (E.D. Pa. Jan. 21, 2005), to contend that to the extent any one of defendants' actions were conducted in or directed at Pennsylvania, such actions are sufficient for Pennsylvania courts to exercise jurisdiction over the conspiring defendants.

I find no merit to this argument. CDI International clarified that "[m]erely belonging to a civil conspiracy does not subject every member to the jurisdiction of every other member's forum." Id. Rather, "personal jurisdiction over a non-Pennsylvania defendant may be asserted if 'substantial acts in furtherance of the conspiracy occurred in Pennsylvania and [ ] the non-forum

13

co-conspirator was aware of or should have been aware of those acts." Id. (quotations omitted). In this case, plaintiff has not identified a single act, let alone substantial acts, that took place in Pennsylvania in furtherance of the alleged conspiracy. Plaintiff's reliance on its bald allegation that defendants' "smear campaign" was directed at both clients and potential clients of Aardvark located throughout the United States requires speculation that some of the acts that were part of this purported nationwide campaign occurred in Pennsylvania. Such speculation is insufficient to allow the court to exercise personal jurisdiction over defendants.

Finally, plaintiff argues "[i]n the event this Court determines that Aardvark must demonstrate additional facts sufficient to establish personal jurisdiction over the Defendants, Aardvark should be permitted to take limited discovery concerning the jurisdictional issues." Pl.'s Resp. Opp'n, ECF No. 10, at p. 13. I decline to allow such discovery. As a general rule, jurisdictional discovery is permitted unless the claim of jurisdiction is "clearly frivolous." LaSala v. Marfin Popular Bank Pub. Co., Ltd., 410 F. App'x 474 (3d Cir. 2011), quoting Toys "R" Us v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003). In order to demonstrate that the claim is not clearly frivolous, "the plaintiff must 'present[ ] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state.'" Id., quoting Toys "R" Us, 318 F.3d at 456 (internal quotations omitted). The Court of Appeals has cautioned against allowing jurisdictional discovery to serve as "a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 157 (3d Cir. 2010).

Plaintiff's request for jurisdictional discovery is nothing more than such a fishing expedition. Its broad allegation of a nationwide scheme, accompanied by a claim that only defendants have information regarding the extent to which they carried out this scheme, does not

suggest with "reasonable particularity" the existence of requisite contacts between the party and the forum state.  Indeed, plaintiff is well aware of the identities of its own clientele and whether it has any Pennsylvania business relations that could have potentially received defamatory communications from defendants.  I decline to now allow discovery simply on the optimistic hope that plaintiff will uncover some conduct directed to Pennsylvania. [5]

## CONCLUSION

For all of the foregoing reasons, I cannot find that plaintiff has alleged sufficient intentional conduct by defendants directed towards Pennsylvania to allow the court to exercise personal jurisdiction over defendants.  Therefore, I will grant defendants' motion and dismiss plaintiff's complaint.

An appropriate Order follows.

---

[5] Having determined that plaintiff did not satisfy the third prong of the Calder effects test, I need not consider the final requirement of specific jurisdiction, which requires a court to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476, quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945).